SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. BOCKELMAN, OSB #105934**
Assistant United States Attorney
Nicole.Bockelman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-CR-00137-AN |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ROBERT ANTHONY BELKA,** | |
| **Defendant.** | |

### INTRODUCTION

Defendant is before the court for sentencing in his fifth conviction involving controlled

substances.  In this case, defendant was found with over 686 grams of cocaine and over 13 grams

of methamphetamine, while possessing two firearms in his hotel room.

The facts of the instant offense combined with defendant's criminal history support the

parties' joint recommendation of 60 months prison followed by three years of supervised release.

It is the government's position that 60 months' imprisonment imposes consequences for

**Government's Sentencing Memorandum**                                                                 **Page 1**

defendant's continued drug activity and his refusal to abide by the court's firearm prohibition; this Court should impose the jointly recommended 60-month prison term.

## FACTUAL BACKGROUND

### A.     The Offense Conduct

On January 12, 2025, an officer with the Portland Police Bureau (PPB) initiated a traffic stop near Northeast 10th and Northeast Sandy Boulevard in Portland, Oregon on a vehicle due to the vehicle's expired license plate tag and dark rear window tinting. The officer contacted the defendant, who was the driver and sole occupant of the car. Defendant provided an Oregon ID card, and the officer performed a Department of Motor Vehicles check on the information provided by defendant. The officer learned defendant did not have a valid driver's license, issued a citation to defendant and ordered a tow for his vehicle.

The officer performed a pat down of defendant and asked if defendant had any weapons on him. Defendant answered "no" and told the officers that he wanted his wallet and his phone from the car. Defendant told the officer that he had a small amount of methamphetamine on him, estimating "maybe two grams".

**Government's Sentencing Memorandum**                                                   **Page 2**

The officer searched defendant and found a large amount of cash in defendant's pants pockets: $1,318 in his left pocket and $555 in defendant's wallet in addition to a small bag of methamphetamine, a saran wrapped bundle of methamphetamine in defendant's front pocket, and a hotel key for the Ramada hotel.



Officers ordered a tow for the vehicle and conducted an inventory of the car. During the search of the defendant's car, police found a large grocery bag with a gray bag inside that felt to officers like it had bundles of cash inside. Police asked defendant what was inside the bag, and defendant told them that his mother passed away and that there was about $20,000 in cash from his mother's life insurance inside the bag. Police found a box of Ziploc baggies, a small bag with methamphetamine, $13,766 in cash, a large Ziploc bag with 417.70 grams of cocaine, another large Ziploc bag with 268.64 grams of cocaine, a small Ziploc bag with 13.97 grams of methamphetamine and a duffel bag with 9mm ammunition and a scale.

**Government's Sentencing Memorandum**                                      **Page 3**

As officers searched defendant's car, he provided consent to search his hotel room located at the Ramada hotel.  Officers confirmed that defendant was the only registered guest and used the keycard provided by defendant to enter the room.  In a drawer near the kitchenette, police found a small black gun safe.  Officers showed defendant the gun safe, and defendant told police the safe did not belong to him. Police opened the safe and found two firearms: a Glock 48 9mm handgun and a privately manufactured firearm.  Police also found $3,000 in cash and 18 9mm bullets in the hotel room.

Post *Miranda,* defendant told police that the drugs found in his vehicle were not his and said they belonged to a man named, "Patrick Belvins".  Defendant explained that he and Patrick were at a strip club the night before and that Patrick had the drugs and had been sharing the drugs with defendant and women working at the strip club.  Defendant said that he and Patrick left the strip club and that he drove Patrick to his house.  Defendant said that Patrick accidentally left his bags in defendant's car.  Defendant said that Patrick called him and told defendant that Patrick forgot his bags in defendant's car and told defendant not to open the bags, but defendant was curious, and opened the bags and saw the cocaine.

Police asked defendant when defendant was going to deliver the cocaine to Patrick, and defendant said he was going to give Patrick the drugs in the morning, but that defendant got busy and was not able to drop the drugs off.  Officers confronted defendant about the large quantity of drugs and that it is not common for people to entrust others to hold on to such large amounts of drugs, but defendant said that Patrick was not concerned about defendant being in possession of Patrick's drugs.  Defendant said his mother passed away in October of 2024 and that he had a life insurance policy of about $21,000.  Defendant said he cashed the check and put the cash in bundles because it, "looks cool".

**Government's Sentencing Memorandum**                                               **Page 4**

DNA testing was performed on both firearms recovered from defendant's hotel room and an Oregon State Police laboratory report was generated finding that defendant cannot be excluded as a contributor of the DNA mixture from the PMF "ghost gun" and that it is approximately 844 billion times more likely to observe the evidentiary profile if defendant and three others are the contributors.  The report explained that defendant cannot be excluded as a contributor to the DNA mixture from the Glock 48 and that it is approximately 288 trillion times more likely to observe the evidentiary profile if defendant and two others are contributors.

**The Charge**

On December 16, 2026, defendant pleaded guilty to Count One of the three-count Superseding Indictment.  Count One charged that on or about January 12, 2026, in the District of Oregon, defendant knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii).  PSR at ¶1

**B.  Guidelines Calculations**

The Pre-Sentence Report (PSR) determined defendant's base level to be 24 under USSG § 2D1.1 and his total offense level to be 23 after all adjustments.  PSR at ¶35.  The parties have no dispute with the PSR calculations.

**C.  Felony Criminal History**

| Crime | Conviction Date | Jurisdiction | Sentence |
| --- | --- | --- | --- |
| Criminal Damage to Property (felony) (Age 13) | 11/17/2003 | White County, Illinois | 2 years probation |
| Burglary (felony) Age 14 | 05/03/2004 | White County, Illinois | 12 months probation |

**Government's Sentencing Memorandum**                                    **Page 5**

| Offense | Date | Location | Sentence |
|---|---|---|---|
| Failure to Report an Accident, Theft, Retail Theft (felonies) Age 16 | 08/23/2006 | White County, Illinois | Indeterminate sentence of imprisonment |
| Theft (felony) Age 16 | 08/30/2006 | White County, Illinois | Indeterminate sentence of imprisonment |
| Theft (felony) Age 17 | 08/29/2007 | White County, Illinois | 3 years prison |
| Unlawful Consumption of Alcohol (misdemeanor) Age 17 | 02/09/2009 | White County, Illinois | 16 days jail, 2 years conditional discharge |
| Driving on a Revoked License (misdemeanor) Age 18 | 09/29/2009 | White County, Illinois | 2 years conditional discharge |
| Battery (felony) Age 19 | 06/01/2009 | White County, Illinois | 45 days jail, 2 years conditional discharge |
| Unlawful Consumption of Alcohol (misdemeanor) Age 19 | 08/31/2009 | White County, Illinois | 2 years probation |
| Retail Theft (misdemeanor) Age 19 | 04/07/2010 | White County, Illinois | 3 months jail, 2 years conditional discharge |
| Unlawful Consumption of Alcohol (misdemeanor) Age 20 | 01/25/2012 | White County, Illinois | 2 years conditional discharge |
| Domestic Battery (misdemeanor) Age 22 | 10/29/2012 | White County, Illinois | 30 days work release; 2 years conditional discharge |
| Driving on a Revoked License (misdemeanor) Age 24 | 12/11/2014 | White County, Illinois | 2 years conditional discharge |
| Driving on a Revoked License (misdemeanor) Age 24 | 05/27/2015 | White County, Illinois | 30 days jail; 2 years conditional discharge |
| Operating a Motor Vehicle Uninsured (misdemeanor) Age 24 | 05/27/2015 | White County, Illinois | 2 years court supervision |

**Government's Sentencing Memorandum** **Page 6**

| | | | |
|---|---|---|---|
| Driving on a Revoked License (misdemeanor) Age 24 | 12/02/2015 | White County, Illinois | 6 months jail; 2 years conditional discharge |
| Expired Registration (misdemeanor) Age 25 | 02/10/2017 | Jefferson County, Illinois | Fine |
| Operating Uninsured Motor Vehicle (misdemeanor) Age 25 | 02/10/2017 | Jefferson County, Illinois | Fine |
| Improper Use of Registration (misdemeanor) Age 25 | 02/10/2017 | Jefferson County, Illinois | Fine |
| Unlawful Possession of a Controlled Substance (felony) Age 25 | 01/07/2016 | Hamilton County, Illinois | 3 years 6 months prison |
| Theft (felony) Age 25 | 12/02/2015 | White County, Illinois | 6 months jail, 2 years conditional discharge |
| Theft (misdemeanor) Age 26 | 10/26/2016 | White County, Illinois | 90 days jail, 2 years conditional discharge |
| Unlawful Delivery of Methamphetamine (felony) Age 26 | 07/24/2017 | White County, Illinois | 3 years prison |
| Retail Theft (felony) Age 27 | 03/15/2017 | White County, Illinois | 3 years 6 months prison |
| Unlawful Display of License Plate (misdemeanor) Age 28 | 12/13/2018 | White County, Illinois | 2 years conditional discharge |
| Unlawful Possession of Drug Paraphernalia (misdemeanor) Age 28 | 12/27/2018 | White County, Illinois | Fine |
| Unlawful Possession of Drug Paraphernalia (misdemeanor) Age 28 | 03/04/2019 | White County, Illinois | Fine |
| Unlawful Possession of Drug Paraphernalia (misdemeanor) Age 28 | 03/04/2019 | White County, Illinois | Fine |
| Unlawful Possession of Methamphetamine (felony) | 05/08/2019 | White County, Illinois | 30 months probation |

**Government's Sentencing Memorandum**                                    **Page 7**

| | | | |
|---|---|---|---|
| Age 29 | | | |
| Resisting a Peace Officer (misdemeanor) Age 29 | 05/08/2019 | White County, Illinois | 102 days jail; 2 years conditional discharge |
| Unlawful Possession of Methamphetamine (felony) Age 29 | 05/08/2019 | White County, Illinois | 30 months probation |
| Retail Theft (misdemeanor) Age 30 | 05/25/2021 | Wayne County, Illinois | 1 year conditional discharge |
| Taking a Motor Vehicle without Permission (felony) Age 31 | 12/06/2022 | Clark County, Washington | 8 days jail |
| Possession of a Forged Instrument I (felony) Age 31 | 01/20/2022 | Clackamas County, Oregon | 10 days jail; 18 months probation |

The total criminal history score for the above convictions is 21 and the corresponding Criminal History Category is VI. PSR at ¶ 74.

### D. Government's Recommended Sentence

The parties jointly recommend 60 months prison followed by three years of supervised release. The government makes this recommendation for the following reasons: (1) the risks associated with defendant's behavior in the instant case and his unabated possession of controlled substances illustrate that 60 months' imprisonment is appropriate to protect the public and, (2) a prison sentence of 60 months will address the defendant's inability to follow the terms of his supervision and the court's orders.

First, it is important to point out that defendant has an incredibly long criminal history, especially for an individual that is not yet 40 years old. Within his criminal history that spans almost 20 years, defendant has several prior drug related convictions; this case is far from defendant's first controlled substance related conviction. In fact, defendant has been convicted

of drug related offenses on four prior occasions.  In defendant's first drug related conviction, he was found with 6 grams of methamphetamine, two scales, a pipe with cannabis reside and less than 15 grams of hydrocodone in 2015.

Defendant's second controlled substance conviction stemmed from a controlled buy organized by Illinois State police and resulted in defendant selling 0.5 grams of methamphetamine to a confidential source in 2017.  In defendant's third controlled substance related conviction from 2019, police in Illinois attempted to stop defendant while driving and defendant parked his car and fled from police.  A search of defendant's vehicle revealed a glass pipe with methamphetamine residue and a cigarette pack with a small chunk of marijuana. Defendant's fourth drug related conviction was also in 2019 when he was convicted of Unlawful Possession of Methamphetamine.  In that offense, a search of defendant revealed a metal pipe with marijuana residue, a glass pipe with methamphetamine residue, and 3 pink pills.  Defendant told police the pills were antacids.

Now, in this case, defendant was found with 686.34 grams of cocaine and 30.91 grams of methamphetamine.  Additionally, there were two firearms found in defendant's hotel room with his DNA.  Defendant's high-risk behavior of possessing distributable quantities of cocaine and methamphetamine with two firearms in his hotel room illustrates a picture of a reckless and dangerous individual who disregards the court's orders. The fact that defendant possessed large quantities of controlled substances with access to two firearms shows the court that he has not earned the trust of the court to believe he will abide by the firearms prohibition in the underlying case.

Defendant has shown the court that he is unwilling to comply with court orders as well as the firearm prohibition through his criminal history record and his lack of compliance while on

**Government's Sentencing Memorandum**                                                        **Page 9**

supervision. A review of defendant's criminal history shows his refusal to comply with the court's orders. In 2011, a petition to revoke probation was filed after defendant committed a new criminal offense while on supervision. In 2016, a petition to revoke was filed after defendant committed a new criminal offense while on supervision. In 2017, a petition to revoke was filed after defendant committed a new criminal offense while on supervision. In 2019, a petition to revoke probation was filed after defendant failed a drug test and failed to pay his fine as directed. Not only does defendant fail to comply with the terms of his supervision, he has a history of committing new criminal offenses while on supervision. A 60-month prison sentence followed by three years of supervised release will protect the community from defendant's criminal behavior.

The parties recommend a prison sentence of 60 months followed by three years of supervised release because this is a sentence that is sufficient but not greater than necessary to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation. *Dean v. United States,* 137 S. Ct. 1170, 1175 (2017); 18 U.S.C. §3553(a).

The nature and circumstances of the underlying offense demonstrate to the court that defendant should not be granted any benefit beyond the reductions already provided. Defendant's conduct demonstrates a disregard of the firearm prohibition that was imposed on him in his multiple sentences, and he should be held accountable for his actions. The jointly recommended 60-month prison term followed by three years' supervised release should be imposed.

**Government's Sentencing Memorandum**                                    **Page 10**

### E.  Forfeiture

As part of his plea agreement, defendant agreed to forfeit all right, title, and interest in and to all assets which are subject to forfeiture pursuant to 18 U.S.C. § 853 including the Glock 49 9mm firearm, the Privately Manufactured Firearm, the $15,639 in cash, and all ammunition and magazines as set forth in Count One of the Indictment.

### **CONCLUSION**

Based on the foregoing, the government urges that this Court impose the jointly recommended 60-month prison sentence, followed by three years' supervised release, subject to the standard conditions, plus the special conditions that have been recommended in the PSR, and imposition of a $100 fee assessment.

Dated: May 6, 2026.                     Respectfully submitted,

SCOTT BRADFORD
United States Attorney


*/s/ Nicole M. Bockelman*
NICOLE M. BOCKELMAN, OSB #105934
Assistant United States Attorneys

**Government's Sentencing Memorandum**                     **Page 11**